KRISTEN A. BEDNARZ,

        Plaintiff,

        v.                                  Case No. 22-C-947

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Kristen Bednarz filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court disagrees and concludes that the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on December 7, 2017, when she was 39 years old. She alleged disability beginning August 22, 2014. R. 196. Plaintiff asserted an inability to work due to a herniated disc, failed back surgery, depression, and anxiety. R. 199. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). ALJ Dean Syrjanen conducted a hearing on March 21, 2019. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 35–70.

At the time of the hearing, Plaintiff lived in a house in Green Bay, Wisconsin, with her husband and three children, ages 22, nine, and six. R. 40. Her adult child has cerebral palsy that requires in-home nursing care. R. 40, 49. Plaintiff testified that she graduated from high school and attended a couple of college classes but did not complete college. R. 41. Plaintiff worked at Prevea Clinic as a receptionist for roughly ten years. R. 42–43. Then, Plaintiff worked at Prevea in the X-ray department for about seven years, in the MRI and CT department for two years, and in the triage department. R. 44–45. Plaintiff stopped working at Prevea in 2014. She explained that she had five back surgeries from 2013 to 2014 and her doctor did not want her to go back to work because Plaintiff would have to shift positions every 20 minutes. R. 47. Plaintiff testified that she did not attempt to go back to work or look for work elsewhere. *Id.*

When the ALJ asked what currently prevented Plaintiff from working, Plaintiff responded that she is "not extremely mentally stable." *Id.* She explained that she is very depressed and has generalized anxiety from her pain and the surgeries. Plaintiff stated that she was diagnosed with failed back surgery syndrome and is in pain all the time. *Id.* She reported that her anxiety and depression prevent her from concentrating and thinking. R. 48. Plaintiff also stated that she experiences seizures once or twice a month. R. 56–58.

As to her typical day, Plaintiff testified that she gets her children ready for school. After she drives them to school, she goes back to bed for a couple of hours and sometimes for the rest of the day. Then Plaintiff picks the children up from school. Plaintiff stated that her husband shops for groceries and prepares meals. She indicated that she tries to do some cleaning but that her friends and husband help with the chores. *Id.* Plaintiff stated that her husband recently started working in a position where he travels for several weeks at a time. R. 55. She testified that she

could sit for a total of three hours in an eight-hour workday and stand and walk for a total of two hours in an eight-hour workday. R. 50–51.

In a written decision dated April 17, 2019, the ALJ found that Plaintiff was not disabled. R. 13–27. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. Plaintiff then filed a complaint in the United States District Court for the Eastern District of Wisconsin seeking judicial review of the ALJ's decision. The matter was reversed and remanded for further proceedings based upon a stipulation of the parties. R. 1792–93; *see Bednarz v. Saul*, No. 20-C-980 (E.D. Wis.).

ALJ Syrjanen held a second administrative hearing on October 6, 2021. R. 1708–29. Plaintiff, who was represented by counsel, and a VE testified. Plaintiff testified that her conditions had not changed since the previous hearing. R. 1716.

In an eighteen-page decision dated November 3, 2021, the ALJ concluded Plaintiff was not disabled. R. 1683–1700. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 22, 2014, through her date last insured of June 30, 2018. R. 1686. Next, the ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: lumbar spine degenerative disc disease status post multiple surgeries, failed back syndrome, seizure disorder, depressive disorder, attention deficit hyperactivity disorder (ADHD), and anxiety and seizure disorder. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 1686–88.

3

Case 1:22-cv-00947-WCG   Filed 08/31/23   Page 3 of 13   Document 21

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following restrictions:

> The claimant could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, could occasionally stoop, kneel, crouch, and crawl, and could never be exposed to workplace hazards such as moving mechanical parts and unprotected heights. The claimant was limited to jobs with no commercial driving. The claimant was further limited to simple and routine tasks and could maintain concentration, persistence and pace for two-hour periods during an eight-hour workday. The claimant was limited to low stress work defined as jobs with no inflexible or fast paced production requirements, and jobs requiring only simple decision making and simple changes that occurred no more than occasionally. The claimant was limited to occasional interaction with the general public.

R. 1688–89. The ALJ found that Plaintiff was unable to perform any past relevant work as a receptionist, scheduler, or x-ray and MRI aide—nurse aide. R. 1697. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of performing jobs existing in significant numbers in the national economy. R. 1698–99. Based on these findings, the ALJ concluded that Plaintiff was not disabled at any time from August 22, 2014, the alleged onset date, through June 30, 2018, the date last insured. R. 1699–1700. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

**LEGAL STANDARD**

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*,

402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

Plaintiff's sole argument on review is that the ALJ's flawed assessment of the medical evidence relating to her back and left leg impairment undermined his conclusion discounting her statements regarding her pain and limitations, as well as his assessment of the opinions of the state agency physicians. Pl.'s Br. 9–16, Dkt. No. 11. Plaintiff argues that the ALJ failed to consider the medical evidence in the record noting that Plaintiff's scarring around her left L4 or L5 nerve root is causing her leg pain. She asserts that the ALJ overlooked treatment notes that described the scarring as the cause of her pain, R. 295–96, 447–48, 1443, 1457, as well as a treatment note

5

from Dr. Ahmed indicating that it would be difficult to treat the pain because scar tissue is likely interfering with optimum placement of local anesthetic and steroids, R. 1504. Plaintiff contends that, as a result of the ALJ's failure to consider this evidence, the ALJ's assessment of Plaintiff's subjective symptoms is not supported by substantial evidence.

The Social Security regulations set forth a two-step procedure for evaluating a claimant's statements about her symptoms, including pain. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p.

The ALJ's credibility finding is given "special deference" by the reviewing court and is overturned "only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)). "Patently wrong is a high threshold—'only when the ALJ's determination lacks any explanation or support . . . will [the court] declare it to be "patently wrong" and deserving of reversal.'" *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) (quoting *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)). The

reviewing court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539.

Plaintiff's principal argument seems to be that the ALJ did not explicitly mention Plaintiff's post-surgery scarring as the cause of her back and left leg pain. But as the Commissioner points out, this made no difference to the analysis since the ALJ did not reject Plaintiff's claim that she experienced pain. The issue wasn't whether she experienced pain or what caused her pain prior to her date last insured; the issue was to what extent pain limited Plaintiff's functional capacity. The ALJ concluded that Plaintiff's pain was not as limiting as she alleged and clearly set out his reasons for reaching this conclusion.

To a large extent, the ALJ found Plaintiff's subjective allegations of severe, disabling, and chronic pain inconsistent with the benign findings in her treatment records. The Commissioner helpfully lists those findings in her brief:

> • normal gait (Tr. 1694, citing Tr. 438, 656, 664, 1429, 1470, 1503, 1659; Tr. 1695, citing Tr. 2113, 2126);
> • 5/5 or normal leg strength (Tr. 1694, citing Tr. 295, 438, 1429, 1442, 1503, 1658; Tr. 1695, citing Tr. 2113, 2126);
> • 5/5 or normal arm strength (Tr. 1694, citing Tr. 1503, 1658; Tr. 1695, citing Tr. 2113, 2126);
> • 5/5 motor strength (Tr. 1694, citing Tr. 657, 664);
> • normal arm and leg range of motion (Tr. 1694, citing Tr. 1503);
> • negative straight leg raise testing (Tr. 1694, citing Tr. 438, 1429, 1443);
> • normal or intact coordination (Tr. 1694, citing 1658; Tr. 1695, citing Tr. 2113, 2126);
> • good stability (Tr. 1659, citing Tr. 1659);
> • normal muscle tone and/or bulk (Tr. 1694, citing Tr. 1470, 1503, 1658; Tr. 1695, citing Tr. 2113, 2126);
> • normal 2+ reflexes (Tr. 1694, citing Tr. 1470, 1442, 1504, 1658; Tr. 1695, citing Tr. 2113, 2126);
> • normal posture (Tr. 1694, citing Tr. 1470); and
> • normal sensation (Tr. 1694, citing Tr. 438, 1658).

Dkt. No. 19 at 5.

Plaintiff argues that merely reciting these findings is not enough to explain why the ALJ rejected her complaints of chronic, disabling pain. But the ALJ began his analysis by citing Social Security Ruling (SSR) 16-3p, which explains that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ." 2017 WL 5180304, at *5. The Ruling goes on to provide the following example:

> . . . an individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result. If no muscle wasting were present, we might not, depending on the other evidence in the record, find the individual's reduced muscle strength on clinical testing to be consistent with the individual's alleged impairment-related symptoms.

*Id.*

As noted above, Plaintiff testified that she could sit for a total of three hours in an eight-hour workday and stand and walk for a total of two hours in an eight-hour workday. R. 50–51. Yet on physical examination she continued to show normal gait, strength, muscle tone, reflexes, coordination, posture, and sensation. The regulations make clear that "[o]bjective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. § 404.1529(c)(2). Plaintiff insists that the case be remanded so that the ALJ can make explicit what is implicit in his analysis, an analysis that both the regulation and Ruling he cited support.

The ALJ did not ignore evidence favorable to Plaintiff. He summarized Plaintiff's history of lumbar spine degenerative disc disease with multiple surgeries. R. 1691. He observed that Plaintiff initially reported experiencing back pain in 2010 and left leg pain in 2012. Plaintiff had a left L4-5 hemilaminotomy and decompression surgery in December 2013; revision left L4-5 hemilaminotomy and left L5-6 hemilaminotomy in January 2014; revision left L5-S1

hemilaminotomy, removal of thickened inflammatory response and decompression of the left L5 and S1 nerve roots in February 2014; evacuation of seroma in March 2014; and a two-level fusion from L4 to S1 with bone grafting and decompression of the L5 and S1 nerve roots in August 2014. *Id.*

The ALJ noted that diagnostic studies produced limited findings. He stated, for instance, that November 2016 treatment notes stated that Plaintiff's EMG and a 2015 MRI were normal, and her provider's impression of the MRI was that there was no evidence of spinal stenosis or disc herniation at any level and that there was only mild foraminal narrowing at the L5-S1 level due to osteophytosis. R. 1694. In addition, an August 2015 CT scan showed postoperative changes at L4-S1 without evidence of spinal stenosis or disc herniation at any level and mild foraminal narrowing at L5-S1 due to osteophytosis, and an October 2016 MRI showed the fusion with no evidence of compressive neuropathy or foraminal narrowing and mild to moderate hypertrophic changes at multiple levels. The ALJ also stated that an April 2018 MRI revealed mild spondylosis and disc disease with no significant stenosis. *Id.*

The ALJ stated that, while Plaintiff's examinations were variable, she overall demonstrated reasonably good musculoskeletal and neurologic function. He cited records from December 2014 and February 2015 indicating that she was in no acute distress and walked into the examination room unassisted with a normal gait, she was able to heel and toe walk, her strength was 5/5, and her straight leg raise testing was negative. The ALJ observed that, while her sensation was normal in December 2014, her sensation was reduced to the left lateral ankle and left lateral thigh in February 2015. He notes that July 2015 treatment notes document positive straight leg raise testing both sitting and supine, hypersensitivity over her left foot and subjective numbness, tenderness, and limited range of motion. But they also revealed that she was in no acute distress and she rose

9

to a standing position easily, her gait was guarded but smooth, she could heel and toe walk, she displayed 5/5 motor strength in her lower extremities, and her sensation was intact except for hypersensitivity over her left foot and subjective numbness. *Id.*

The ALJ also highlighted an October 2015 examination that revealed no acute distress, normal posture and gait, and an ability to walk on heels and toes, and her coordination, reflexes, muscle strength, and tone were normal, but she had decreased sensation in the left L5 distribution. He noted that November 2015 treatment notes include an emergency room visit for Plaintiff's classic leg pain but that her examination showed no gross deformity, weakness, abnormal sensation, or gait abnormality even while she was experiencing a subjective flare-up of pain. The ALJ observed that, in May 2016, Plaintiff reported tenderness to her left sacral suclcus and left iliac crest and her left lower extremity sensation was abnormal, but her reflexes were 2+, her strength was 5/5, and her straight leg raise testing was normal, and that a November 2016 examination showed Plaintiff to be sitting up in her chair without any apparent distress, her sensation was intact except for diminished sensation in the left leg in a stocking distribution, her muscle tone and bulk were normal in the upper and lower extremities, her strength was 5/5 in the bilateral upper and lower extremities, her range of motion in her extremities was normal, her reflexes were 2+, her coordination was intact, and her gait and station were normal. *Id.*

The ALJ noted that December 2016 and January 2017 examinations produced reduced range of motion, positive facet loading testing, positive straight leg raise testing, and diminished sensation in her left lower extremity, but Plaintiff had an ability to heel and toe walk, normal gait, and 5/5 strength. In addition, a December 2017 examination revealed no distress, 5/5 strength throughout, and normal muscle tone in the upper and lower extremities with no atrophy, 2+ reflexes, intact coordination, and normal sensation. The ALJ observed that she was able to easily

10

stand and initiate gait without hesitancy; her gait was of normal stride; she had good stability, stooping, and turning with good heel and toe gait; and she performed tandem gait without difficulty. R. 1694–95. He also stated that January and April 2018 examinations revealed normal muscle testing and tone, normal deep tendon reflexes, normal rapid alternating movements in the upper and lower extremities, and normal gait. R. 1695.

The ALJ also acknowledged that Plaintiff demonstrated "abnormalities" on examination. R. 1691. He noted that, at times, Plaintiff exhibited decreased sensation in her left lower extremity, positive straight leg raise testing sitting and supine, tenderness, and limited spine range of motion. He also observed that, although Plaintiff's post-operative treatment included pain medication such as narcotic-based medication, pain preventive medication, epidural steroid injections, and physical therapy, Plaintiff reported incomplete and, at best, short-term relief from these interventions. The ALJ noted that, following the surgeries, Plaintiff reported severe low back and left lower extremity pain with tingling and numbness extending down her left lower extremity. He stated that Plaintiff was diagnosed with failed back syndrome. *Id.*

The ALJ also relied on the administrative findings of the State agency medical consultants, Abraham Colb, M.D., and Mina Khorshidi, M.D. R. 1696–97. Dr. Khorshidi limited Plaintiff to light exertional work with avoidance of all exposure to hazards, and Dr. Colb limited Plaintiff to light exertional work with occasional postural activities and avoidance of even moderate exposure to hazards. The ALJ found that their findings were generally persuasive because they were consistent with and supported by the record. He explained that Plaintiff had not reported ongoing seizure activity to her providers, the diagnostic studies had been normal, imaging of her spine had produced limited findings, and clinical examinations revealed reasonably good neurologic and musculoskeletal function. *Id.*

11

In addition, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence in the record because she admitted to activities that exceeded her alleged abilities. He noted that Plaintiff described how she cares for her disabled, paralyzed adult son as well as a four-year old and toddler while her husband travels for weeks for work. R. 1693. She acknowledged that she continues to care for her adult, disabled son on a regular basis for three to four hours a day and sometimes overnight, and that her caretaking duties include moving, rolling, and changing him; managing the device used for his breathing; and feeding him through a feeding tube. *Id.*

Thus, while the ALJ did not explicitly mention post-surgical scarring, the ALJ thoroughly discussed the records pertaining to Plaintiff's back and left leg pain. Plaintiff neither points to any additional symptoms the ALJ failed to consider with respect to the post-surgery scarring nor explains how explicitly noting that the post-surgery scarring was the cause of Plaintiff's back and leg pain would have changed the ALJ's analysis. Plaintiff also asserts that the ALJ erred in weighing the evidence, including the findings of the state agency consultants, because he improperly relied on Plaintiffs' benign treatment findings and failed to connect the medical evidence to his conclusions.

After reviewing the evidence as a whole, the ALJ determined that Plaintiff had severe impairments, but that she was not as limited as she alleged. He concluded that the generally mild findings on imaging and her physical examinations did not provide substantial support for Plaintiff being unable to stand/walk for 6 out of 8 hours or otherwise sustain the range of light exertional level work described in the ALJ's decision. The ALJ concluded that, due to Plaintiff's spine disorders, she has the RFC to perform light exertional work with certain limitations. R. 1691. He explained that the limitation to light exertional lifting and carrying addresses Plaintiff's extensive

12

Case 1:22-cv-00947-WCG   Filed 08/31/23   Page 12 of 13   Document 21

surgical history with residual complaints of back pain with radicular symptoms into her left lower extremity and the dysfunction on examination. R. 1691–92. The ALJ further stated that the postural and environmental restrictions address Plaintiff's symptoms and the clinical findings evidencing left lower extremity sensory deficits, limited spine range of motion, and positive straight leg raise testing. R. 1692. Although the ALJ acknowledged that Plaintiff experiences pain, he concluded that Plaintiff's inability to work pain-free, standing alone, is not a sufficient reason to find her disabled. R. 1695.

In short, the ALJ explained how the medical evidence as well as the record as a whole contradicted Plaintiff's statements about her symptoms. Plaintiff essentially requests that the court reweigh the evidence and overrule the ALJ's findings. But the fact that reasonable factfinders may reach different conclusions is not a reason to overturn the ALJ's determination. The ALJ's conclusion is supported by substantial evidence and is not patently wrong. The court concludes that the ALJ did not commit any legal errors and, thus, remand is not warranted.

## CONCLUSION

For these reasons, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of August, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge